# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

RIGOBERTO MARTINEZ,

     Petitioner,

-vs-                                              Case No. 8:16-cv-700-T-36TGW

SECRETARY, DEPARTMENT
OF CORRECTIONS,

     Respondent.
_____/

## **ORDER**

Petitioner, a Florida prisoner, initiated this action by filing a petition for the writ of habeas corpus pursuant to 28 U.S.C. Section 2254 (Dkt. 1). Upon consideration of the petition, the Court ordered Respondent to show cause why the relief sought in the petition should not be granted (Dkt. 13). Thereafter, Respondent filed a response (Dkt. 18). After review, the petition will be denied.

Petitioner alleges six grounds for relief in his petition:

1. TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO FILE A MOTION TO SUPPRESS THE DEFENDANT'S STATEMENTS MADE TO THE HILLSBOROUGH COUNTY SHERIFF'S OFFICE DURING A CUSTODIAL INTERROGATION;

2. TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO MOVE TO DISMISS THE CHARGE OF ARSON AT THE OUTSET OF THE DEFENDANT'S TRIAL BASED ON THE TRIAL COURT'S LACK OF JURISDICTION;

3. TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO REQUEST ADDITIONAL TIME TO PREPARE A DEFENSE TO THE AMENDED CHARGING INFORMATION;

4. TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO OBJECT TO CLEAR MISCONDUCT BY THE PROSECUTOR;

5. TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO FILE A MOTION REQUESTING A COMPETENCY HEARING WHICH RESULTED IN A DENIAL OF DUE PROCESS; and
6. THE OVERALL CUMULATIVE EFFECT OF ANY TWO OR MORE ERRORS

COMMITTED BY COUNSEL SUPPORTS A FINDING OF INEFFECTIVE ASSISTANCE OF COUNSEL.

## I. PROCEDURAL HISTORY

Petitioner was charged with two counts of kidnaping (Counts 1 and 2), seven counts of sexual battery with a deadly weapon or force likely to cause injury (Counts 3-9), attempted robbery (Count 10), arson (Count 11), burglary of an unoccupied structure (Count 12), grand theft (Count 13), and grand theft of a motor vehicle (Count 14) (Dkt. 19-2, record pp. 76-87). A jury trial was held, and Count 11 was dismissed following the presentation of evidence (*Id.*, record p. 92). Petitioner was found guilty as charged as to Counts 1-10, 12, and 14 (*Id.*, record pp. 92, 135-39), and as to Count 13, he was found guilty of the lesser included offense of petit theft (*Id.*, record pp. 92, 139). He was sentenced to concurrent sentences of life on the two kidnaping counts and each of the seven sexual battery counts, fifteen years on the attempted robbery count, five years on the burglary and grand theft motor vehicle counts, and time served on the petit theft count (*Id.*, record pp. 154-76). The convictions and sentences were affirmed on appeal (Dkt. 19-4, docket p. 281).

Petitioner pursued post-conviction relief under Rule 3.850, Florida Rules of Criminal Procedure (Dkt. 19-4, docket pp. 211-25). The state post-conviction court denied the motion for post-conviction relief (*Id.*, docket pp. 226-79). The denial of the motion was affirmed on appeal (Dkt. 19-5, docket p. 30).

Petitioner thereafter filed his federal habeas petition in this court (Dkt. 1).

## II. GOVERNING LEGAL PRINCIPLES

Because Petitioner filed his petition after April 24, 1996, this case is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Penry v. Johnson*, 532 U.S. 782, 792 (2001); *Henderson v. Campbell*, 353 F.3d 880, 889-90 (11th

Cir. 2003). The AEDPA "establishes a more deferential standard of review of state habeas judgments," *Fugate v. Head*, 261 F.3d 1206, 1215 (11th Cir. 2001), in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002); *see also Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (recognizing that the federal habeas court's evaluation of state-court rulings is highly deferential and that state-court decisions must be given the benefit of the doubt).

**A. Standard of Review Under the AEDPA**

Pursuant to the AEDPA, habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The phrase "clearly established Federal law," encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider." *Maharaj v. Secretary for Dep't. of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005). The meaning of the clauses was discussed by the Eleventh Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United

States Supreme Court] has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

If the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable." *Id*.

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

## 2. Ineffective Assistance of Counsel Standard

Claims of ineffective assistance of counsel are analyzed under the test set forth in *Strickland* v. *Washington*, 466 U.S. 668 (1984), which requires a petitioner to demonstrate both deficient performance by counsel and resulting prejudice. Demonstrating deficient performance "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687. Deficient performance is established if, "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id*. at 690. However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. Additionally, "a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts

of the particular case, viewed as of the time of counsel's conduct." *Id*.

Petitioner must demonstrate that counsel's alleged errors prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691-92. To show prejudice, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

Sustaining a claim of ineffective assistance of counsel on federal habeas review is very difficult because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citations omitted). *See also Cullen v. Pinholster*, 563 U.S. 170, 202 (2011) (a petitioner must overcome the "'doubly deferential' standard of *Strickland* and AEDPA.") (citation omitted).

If a claim of ineffective assistance of counsel can be resolved through one of the *Strickland* test's two prongs, the other prong need not be considered. 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998) ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds.").

### 3. Exhaustion of State Remedies and Procedural Default

Before a district court can grant habeas relief to a state prisoner under § 2254, the petitioner must exhaust all state court remedies that are available for challenging his conviction, either on direct appeal or in a state post-conviction motion. See § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526

U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."). A state prisoner "'must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process,' including review by the state's court of last resort, even if review in that court is discretionary." *Pruitt v. Jones*, 348 F.3d 1355, 1358-59 (11th Cir. 2003) (quoting *O'Sullivan*, 526 U.S. at 845.)

To exhaust a claim, a petitioner must make the state court aware of both the legal and factual bases for his claim. *See Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998) ("Exhaustion of state remedies requires that the state prisoner 'fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass on and correct alleged violations of its' prisoners federal rights.'") (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)). A federal habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State. . .if he has the right under the law of the State to raise, by any available procedure, the question presented." *Pruitt*, 348 F.3d at 1358. The prohibition against raising an unexhausted claim in federal court extends to both the broad legal theory of relief and the specific factual contention that supports relief. *Kelley v. Sec'y, Dep't of Corr.*, 377 F.3d 1317, 1344 (11th Cir. 2004).

The requirement of exhausting state remedies as a prerequisite to federal review is satisfied if the petitioner "fairly presents" his claim in each appropriate state court and alerts that court to the federal nature of the claim. 28 *U.S.C. § 2254(b)(1); Picard v. Connor*, 404 U.S. 270, 275-76 (1971). A petitioner may raise a federal claim in state court "by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such claim on federal grounds, or simply by labeling the claim 'federal.'" *Baldwin v. Reese*, 541 U.S. 27, 32 (2004).

The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F. 3d 695, 703 (11th Cir. 1999). *See also Murray v. Carrier*, 477 U.S. 478 (1986). To show prejudice, a petitioner must demonstrate not only that the errors at his trial created the possibility of prejudice but that they worked to his actual and substantial disadvantage and infected the entire trial with error of constitutional dimensions. *United States v. Frady*, 456 U.S. 152 (1982). The petitioner must show at least a reasonable probability of a different outcome. *Crawford v. Head*, 311 F.3d 1288, 1327-28 (11th Cir. 2002).

Alternatively, a petitioner may obtain federal habeas review of a procedurally defaulted claim if review is necessary to correct a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Carrier,* 477 U.S. at 495-96. A fundamental miscarriage of justice occurs in an extraordinary case where a constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). To meet this standard, a petitioner must show a reasonable likelihood of acquittal absent the constitutional error. *Schlup*, 513 U.S. at 327.

## III. ANALYSIS

## Ground One

Petitioner contends that defense counsel was ineffective in failing to move to suppress a recorded statement he gave to law enforcement. He asserts that he informed counsel that before he gave the statement, he was threatened by a "big white officer." He further asserts that although he told the two officers that interrogated him that he had been threatened, they failed to investigate the threat. He argues that his statement was therefore involuntary because it was coerced.

Petitioner raised this claim in Ground One of his amended Rule 3.850 motion (Dkt. 19-4, docket pp. 302-06). There, he alleged that he told counsel that "he had been threatened by a 'big white officer.'" (*Id.*, docket p. 303). He further alleged that the "record" revealed that "the detectives conducting the interview did nothing to investigate the threats." (*Id.*, docket p. 304). The amended Rule 3.850 motion neither identified who the "big white officer" was, nor explained how Petitioner was threatened (*Id.*, docket pp. 302-06).

The state post-conviction court identified *Strickland* as the controlling legal standard and denied relief on this claim, as follows:

> In claim one, Defendant alleges ineffective assistance of counsel due to counsel's failure to file a motion to suppress Defendant's statements to Hillsborough County Sheriffs Office. *See* Defendant's Amended Motion for Postconviction Relief and Memorandum of Law in Support of Defendant's Amended Motion for Postconviction Relief, attached. Specifically, Defendant alleges that he informed counsel "that he had been threatened by a 'big white officer'" prior to speaking with law enforcement, which he alleges is substantiated by the record. *Id.* It is Defendant's contention that "there is no doubt that the admitted statements significantly enhanced and/or bolstered various points of contention within the State's case" and that "it is clear from the record that trial counsel's failure in not moving to suppress Defendant's statement meets both the deficiency and the prejudice prongs of ineffective assistance of counsel." *Id.*
>
> After reviewing the allegations, the court file, and the record, the Court finds claim one to be facially insufficient because Defendant failed to sufficiently allege prejudice how the outcome of the proceedings would have been different - resulting from counsel's alleged deficiency. Normally, the Court would dismiss claim one without prejudice to allow Defendant to re-file a facially sufficient claim.

However, because the Court finds Defendant's allegations in claim one are conclusively refuted by the record, it is not necessary for the Court to dismiss claim one for such a deficiency.

The Court finds that defense counsel did not act deficiently because filing a motion to suppress Defendant's statements would have been meritless. Detective Jose Lugo testified as follows with regard to Defendant's waiver of *Miranda* and subsequent statement:

STATE: Now, during the course of the night on August the 20th, did you make contact with [Defendant]?

DETECTIVE: Yes, ma'am.

STATE: Okay. And describe for the jury when that occurred.

DETECTIVE: After we get the call, [Defendant] is detained, he's stopped. I believe he was running away from that vehicle.

STATE: Okay. And so when you got there, was he already detained?

DETECTIVE: Yes ma'am.

STATE: And what did you do once [Defendant] upon your observation was detained?

DETECTIVE: I just started conversation with him talking to him.

STATE: Okay. Were you speaking in English or Spanish?

DETECTIVE: I believe both.

STATE: Okay. And were you able to have conversations with him in English?

DETECTIVE: Yes, ma'am.

STATE: And would he answer appropriately to your questions? And by that, I mean if you asked him was the sky blue? He wouldn't say I had pizza for lunch. You know, those types of things, was he answering relevantly in English?

DETECTIVE: Yes, ma'am.

STATE: Now, what was your conversation about when [Defendant] was detained?

DETECTIVE: Right away he started making statements in reference to the crimes.

STATE: Okay. Let me stop you right there. Had you already started questioning him?

DETECTIVE: No, ma'am.

STATE: Okay. Had you already started talking to him?

DETECTIVE: No, ma'am.

STATE: In your presence, had any other law enforcement officers asked him any questions?

DETECTIVE: No, ma'am.

STATE: So these statements, were they in response to any sort of inquiry by law enforcement officers in your presence?

DETECTIVE: No, ma'am...

STATE: So what does he tell you or what does he say?

DETECTIVE: He started telling me that - his statement exactly was, "I'm guilty. I'm guilty. Let me show you where the other two guys are."

STATE: Now, at this point, were you aware that there were three suspects?

DETECTIVE: Yes.

STATE: And so once he tells you, "let me show you where the other two are," what's your immediate response to him?

DETECTIVE: I wanted to know where the other two guys were and who they were.

STATE: So did you attempt to use his cooperation with you to attempt to locate the two [other individuals]?

DETECTIVE: Yes, ma'am.

STATE: And what did you do to utilize his cooperation?

DETECTIVE: The first thing I did, I stopped him, I read him his rights. And after that, we got him in the patrol vehicle and he gave us directions to the Constancia

apartments in Wimauma.

STATE: Okay. Let me just kind of take you a couple steps back. You said you read him his rights. Do you recall how you read those rights to him?

DETECTIVE: I read them off a form, but the form that I had was in English, so I just translated it for him.

STATE: Okay. Did you subsequently also give him Miranda rights at a different location in Spanish?

DETECTIVE: Yes, ma'am.

STATE: And did you do these rights, the first set of rights, in the same way as you did later that - I guess in the early morning hours of the 21st?

DETECTIVE: Yes.

STATE: And did he agree to speak to you without the presence of an attorney?

DETECTIVE: Yes...

STATE: Detective, I'm showing you what's been marked for identification as State's exhibit No. 19. Do you recognize that?

DETECTIVE: Yes, ma'am.

STATE: What do you recognize that to be?

DETECTIVE: That is the form that I used to advise [Defendant] of his rights and for the vehicle, the consent to search the vehicle.

STATE: Okay. So this form is used for two purposes; is that correct?

DETECTIVE: Yes, it's a multi-purpose form.

STATE: And so when you advise [Defendant] of his Miranda rights in Spanish, were you using this form as the backdrop to translate from?

DETECTIVE: Yes, ma'am...

STATE: And did you have him initial or sign this form?

DETECTIVE: Yes, I had him initial both parts of the form and he signed the

bottom.

STATE: And were you a witness to that?

DETECTIVE: Yes...

(STATE'S EXHIBIT 19 WAS ADMITTED INTO EVIDENCE)

STATE: Now, detective, on this form that you just called like a multi- purpose form, the form what you referred to as consent to be interviewed, those initials that are placed in that box, were those placed by [Defendant]?

DETECTIVE: Yes, ma'am.

STATE: And next to that it says, "Ninth grade. No drugs and no alcohol." Why is that there?

DETECTIVE: I wrote it there...

STATE: Did you obtain that information from [Defendant]?

DETECTIVE: Yes.

STATE: To determine how far he'd gone in school?

DETECTIVE: Yes, ma'am.

STATE: And whether as he's speaking to you he's under the influence of anything?

DETECTIVE: That's correct.

STATE: And that's what you referred to earlier as the first Miranda, correct?

DETECTIVE: That's correct...

STATE: Now, once you had his permission to speak to him and you were riding around with him, where was the next place you took him?

DETECTIVE: We took him back to the Criminal Investigations Division...

STATE: Now, where did you place him when he went to that unit?...

DETECTIVE: Put him in an interview room.

STATE: These interview rooms, can you tell members of the jury, are they equipped with certain equipment?

DETECTIVE: Yes, they are equipped for video and audio.

STATE: And was that activated when the interview with [Defendant] was conducted?

DETECTIVE: Yes, ma'am...

STATE: Once you took him to the Criminal Investigations Division, did you, again, reiterate his Miranda rights?

DETECTIVE: Yes, I read him his rights again.

*See* trial transcript, pages 738-756, attached. Following Detective Lugo's direct examination, he was thoroughly cross-examined by defense counsel. *See* trial transcript, pages 756-765, attached. Detective Lugo reiterated that he did not believe Defendant was under the influence of any alcohol or drugs and that Defendant understood all of his rights. *See* trial transcript, pages 759-760, attached. With regard to Defendant's allegations of coercion, Detective Lugo testified as follows:

DEFENSE: Did you make him any promises in order to talk to you?

DETECTIVE: No, ma'am.

DEFENSE: Did you threaten him in order for him to talk to you?

DETECTIVE: No, ma'am.

DEFENSE: Apparently someone threatened him, huh?

DETECTIVE: I believe during the interview he said that when he was arrested - I asked him just that, had anybody threatened you? And he said, oh, the guy, the white guy did, is what he told me.

DEFENSE: Okay. And who is the white guy?

DETECTIVE: I'm not sure.

DEFENSE: Okay. And so were you present when he was threatened by the white guy?

DETECTIVE: No, ma'am.

DEFENSE: And did you follow up on that by asking him what did the white guy - or I guess he told you the white guy, right?

DETECTIVE: Yes, ma'am.

DEFENSE: Okay. So did you follow up with him and say, well, what did the white guy threaten you with?

DETECTIVE: No, I followed up. I asked him, have I made you any promises? Have I threatened you? Has Detective Morgan in any way make you a promise or threaten you in any way? And he said no.

DEFENSE: Okay. But did you ask him if he was still afraid by the threat of the white guy?

DETECTIVE: No, ma'am.

*See* trial transcript, pages 760-761, attached. On redirect examination, Detective Lugo testified as follows:

STATE: And with regards to the questioning regarding making promises or threats, did [Defendant] ever tell you who this white guy was that threatened him?

DETECTIVE: No, ma'am.

STATE: Do you even know whether it was a police officer?

DETECTIVE: No ma'am.

STATE: Did you threaten him in any way?

DETECTIVE: No ma'am.

STATE: Did you make him any promises of leniency at all?
DETECTIVE: No, ma'am.

STATE: Did Detective Morgan do that?

DETECTIVE: No ma'am

STATE: Now, you were asked some questions about whether you inquired whether he was still afraid of this white guy that had threatened him. Do you recall him saying during your interview, well, if I cooperate with you, how is that going to benefit me?

14

DETECTIVE: Yes, ma'am.

STATE: Is that going to be a benefit?

DETECTIVE: I recall that.

*See* trial transcript, pages 765 - 766, attached. The taped statement reflected the testimony of Detective Lugo. *See* trial transcript, pages 868 - 911, attached. A Spanish interpreter, Ms. Gloria Munoz, translated Detective Lugo's reading of Defendant's *Miranda* rights. *See* trial transcript, pages 606 - 614, attached. Specifically, with regard to Defendant's allegations, the following conversation took place between Defendant and Detective Lugo:

DETECTIVE: So it says this, I wish to make a statement. I can invoke my right to an attorney or to remain silent at any time during the interrogations. You understand that? You understand these rights and nobody has threatened you? Has anybody threatened you?

DEFENDANT: The one who grabbed me.

DETECTIVE: The one who grabbed you?

DEFENDANT: But no, it was a man, a blonde.

DETECTIVE: Okay. Um, us right now, she or I, have we threatened you to talk to us?

DEFENDANT: No.

DETECTIVE: Okay. Coerced, in many times these forms are translated into words that are hard to understand because the computer does them. In order [sic] words - words, coerced is that nobody has forced you to talk to us. She has not forced you.
DEFENDANT: No.

DETECTIVE: I am not forcing you. Okay. And we have not promised you anything to induce you to make a statement, talk to us. I have not made you any promise.

DEFENDANT: Okay.

DETECTIVE: I have not, right?

DEFENDANT: No.

DETECTIVE: She has not made - she has not made you promises. Right now at this time, do you wish to make a statement or talk to us?

DEFENDANT: What?

DETECTIVE: You, about what happened, do you want to explain to us what happened?

DEFENDANT: Yes.

DETECTIVE: Yes.

DEFENDANT: And - and - and if I help more how - I know - I know a lot of movement can - can - can benefit me or just what I'm going to receive?

DETECTIVE: Let me sign this and I'll explain. This is what I read to you.

DEFENDANT: Okay.

DETECTIVE: You reached, you told me, ninth grade, right?

DEFENDANT: Yes.

DETECTIVE: Are you under the influence of alcohol or drugs?

DEFENDANT: No.

DETECTIVE: Just like the other forms I gave you there, it's just that this one is in Spanish. And I wanted you to understand, your initials and sign here where the X is. I know - I know you told me some things already and I already told you some things, too. I told you when we were in the car to just wait - to wait until this moment. Now, we can talk if you want - if you want to. And remember, I told you I want the truth because we know a lot of things already. So but this is the opportunity that you have to tell your side of what happened so we can understand.

*See* trial transcript, pages 612 -614, attached.

The Court notes that even if a defendant initially waives his *Miranda* rights and agrees to speak with law enforcement, the State must prove that the defendant's confession was voluntary. *Grasle v. State*, 779 So. 2d 334, 336 (Fla. 2d DCA 2000). A court considers the voluntariness of a confession based on the totality of the circumstances. *See Fex v. State*, 386 So. 2d 58, 58 (Fla. 2d DCA 1980) (finding a confession was involuntary considering the age of the defendant, prior criminal history, officer's statements during interrogation, and promise to keep bond as low

as possible). A confession cannot be voluntary if it is the result of a direct or implied promise of leniency, *Grasle,* 779 So. 2d at 337, or a hint of a quid pro quo bargain inducing the confession. *State v. Moore,* 530 So. 2d 349 (Fla. 2d DCA 1988). This includes promises not to prosecute or promises to release the defendant. *Blake v. State*, 972 So. 2d 839, 844 (Fla. 2007). A promise or bargain is not enough, by itself, to render a confession involuntary; there must be a causal connection by which the promise or bargain induces the confession. *Blake*, 972 So. 2d at 844. Merely telling the defendant that it would be easier on him if he told the truth isn't a promise of leniency. *Id*.

The Court finds that, considering the totality of the circumstances, the record reflects that Defendant's confession was voluntary. Following Defendant's mention of being threatened by the "big white officer," Detectives Lugo and Morgan inquire as to whether Defendant feels threatened to talk by either of them. *See* trial transcript, page 612, attached. Further, Detective Lugo asks Defendant whether he feels "forced" to talk to them or whether he has been promised something in exchange for speaking with the detectives. *See* trial transcript, pages 612 - 613, attached. Defendant responded in the negative to all of the above questions. *Id*.

As such, defense counsel "cannot be found ineffective for failing to pursue a course of action that counsel would-or should-have known was futile." *Claps v. State*, 971 So.2d 131, 134 (Fla. 2d DCA 2007); *see Maxwell v. Wainwright*, 490 So.2d 927, 932 (Fla. 1986) (finding that "we cannot find ineffectiveness based on lack of objection or argument when counsel could reasonably have decided that such objection or argument would have been futile in view of the established rules of law"); *see also Willacy v. State*, 967 So.2d 131, 140 (Fla. 2007) (explaining that "counsel is not ineffective for failing to make a futile objection["]). The Court finds that even if counsel would have filed the alleged motion to suppress, based on the totality of the circumstances, it would have been denied. **Consequently, because Defendant cannot prove deficient conduct or prejudice, no relief is warranted on claim one of Defendant's motion.**
(Dkt. 19-4, docket pp. 229-39) (emphasis in original). The appellate court affirmed.

Viewing the record as a whole, a reasonable attorney could conclude that a motion to suppress on grounds of coercion would not be successful. A confession is involuntary if the suspect's "will was overborne in such a way to render his confession the product of coercion." *Arizona v. Fulminante*, 499 U.S. 279, 288 (1991). Petitioner has failed to demonstrate that his statement was the product of coercion.

It is apparent from the record that neither Detective Lugo nor Detective Morgan coerced

Petitioner into giving his statement, and Petitioner does not contend otherwise. The only evidence he offered to support his claim of coercion was a wholly vague assertion that a "big white officer" "threatened" him at some time before he was interviewed. Petitioner, however, never has alleged how the officer threatened him, and how the threat coerced him into confessing. His bare allegation that an officer made an unspecified "threat" to coerce his confession is too vague and conclusory to show that counsel should have moved to have his confession excluded due to coercion. *See Machibroda v. United States*, 368 U.S. 487 (1962) (conclusory allegations, unsupported by specifics, are subject to summary dismissal); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir.1991) (a movant is not entitled to habeas corpus relief when the claims are merely conclusory allegations unsupported by specifics).

The state court's denial of this claim was not an unreasonable application of *Strickland*. Nor was the decision based on an unreasonable determination of the facts. Accordingly, Petitioner is not entitled to federal habeas relief on Ground One.

**Ground Two**

Petitioner contends that defense counsel was ineffective in failing to move to dismiss the arson count at the beginning of trial rather than at the conclusion of the State's case. He asserts that the arson was committed in Manatee County, and therefore the circuit court for Hillsborough County, where the trial was held, lacked jurisdiction over the offense. He asserts that counsel's failure to move to dismiss the arson charge before trial allowed the State to introduce evidence regarding the arson. He argues that he was prejudiced by that evidence because it "was used to indicate an attempt or desire to conceal evidence," and may have influenced the jury to find him guilty of the other offenses for which he was charged.

18

In state court, Petitioner raised this claim in Ground Two of his amended Rule 3.850 motion

(Dkt. 19-4, docket pp. 306-08). In denying the claim, the state post-conviction court stated:

> In claim two, Defendant alleges ineffective assistance of counsel due to counsel's failure to move to dismiss the charge of arson due to lack of jurisdiction. *See* Defendant's Amended Motion for Postconviction Relief and Memorandum of Law in Support of Defendant's Amended Motion for Postconviction Relief, attached. Specifically, Defendant alleges that "the trial court lacked the jurisdiction for the arson charges [because]... the alleged arson in question occurred in Manatee County and there was no evidence that the arson's origin consisted of events or from a crime committed in Hillsborough County." *Id*. Defendant argues that "it is a completely reasonable thought that the jury would be affected by testimony that demonstrates that the Defendant attempted to destroy and/or conceal evidence in a charged crime... [and that] testimony being presented to a jury in this manner could only affect the jury's deliberative process in a negative manner." *Id*. It is Defendant's contention that "because trial counsel failed to move to dismiss the amended count of arson which allowed the jury to be affected by testimony regarding the amended charging information, the Defendant's convictions and sentences should be vacated, and the Defendant should be granted a new trial." *Id*.

> After reviewing the allegations, the court file, and the record, the Court finds claim two to be facially insufficient because Defendant failed to sufficiently allege prejudice - how the outcome of the proceedings would have been different resulting from counsel's alleged deficiency. Normally, the Court would dismiss claim two without prejudice to allow Defendant to re-file a facially sufficient claim. However, because the Court finds Defendant's allegations in claim two are conclusively refuted by the record, it is not necessary for the Court to dismiss claim two for such a deficiency.

> The record reflects that the following motion to dismiss was argued by Defendant's counsel following the State resting their case:

> THE COURT: We can go back on the record .. .I'll just turn to counsel, any matters you wish to raise?

> DEFENSE: Judge, I'd like to move for a judgment of acquittal in this case. And I just want to make sure we're covering this right now. I mean, you know, motion to dismiss on the - on the arson count. You're granting the motion to dismiss on the arson count because the - because the State didn't have jurisdiction - or the Court doesn't have jurisdiction actually of that count.

> THE COURT: All right. Let's hear from both counsel on that. Once again, we sort of addressed this earlier. The State indicated it wasn't going forward on a count and

I believe you indicated that was count 11, the arson.

STATE: Yes, your honor.

THE COURT: Now, I imagine it's important that we address this. I take it from the perspective of the Court, at this point, do I have a motion and what's the nature of the motion as to that count?

DEFENSE: Well, Judge, I'm going to move to dismiss because the Court doesn't have jurisdiction over that count.

STATE: Judge, the State is not going to rebut with any argument. And I just want to place on the record when the case initially started, there were indications from - and it was a mistaken belief on my part so - that the defendant had actually planned the arson in Hillsborough County and then just executed the plan in Manatee; but as we reviewed the tape, listened to it a little closer and looked at all the evidence, the State cannot prove with a reasonable certainty that the crime of arson, at least the inception of it began in Hillsborough County. In fact, all indications are based even on the victim's testimony that when he dropped them off, it was at or very near to the Manatee County line and it was only after that that [Defendant] through his statement indicated he wanted to get rid of the vehicle, so based on all of that, the State is not going to go forward with any argument on the motion to dismiss.

THE COURT: Okay. Now that - once again, I know I'm going to dance around this for a second; but I'm hearing it in the form of a motion to dismiss essentially based upon jurisdiction. I'm also mindful of the fact that it's as charged that jeopardy has attached with the swearing of this jury as to the charges before us.

STATE: That's correct, your honor.

THE COURT: So-

DEFENSE: I'm still asking you to dismiss it, your honor.

THE COURT: All right.

STATE: And I have no opposition to that motion.

THE COURT: All right. Well, then to the extent that's a motion to dismiss under the circumstance with the notation I've just made on the record, then I'll grant that.

*See* trial transcript, pages 919 - 921, attached. Defendant cannot prove counsel acted deficiently when counsel did in fact move to dismiss the arson charge upon the

basis of the Court lacking jurisdiction. Further, Defendant cannot prove that he suffered prejudice when the count was dismissed and thus he was not convicted of arson. *See* judgment and sentence, attached. **Consequently, no relief is warranted on claim two of Defendant's motion.**

(Dkt. 19-4, docket pp. 240-42) (emphasis in original).

This claim fails because Petitioner does not demonstrate prejudice. Even if the arson charge had been dismissed before trial, Petitioner has not argued or demonstrated that the evidence showing he burned the truck would not have been admissible to prove facts pertinent to other issues in the case. *See Straight v. State*, 397 So.2d 903, 908 (Fla.1981) ("When a suspected person in any manner attempts to escape or evade a threatened prosecution by flight, *concealment*, resistance to lawful arrest, or *other indications after the fact of a desire to evade prosecution*, such fact is admissible, being relevant to the consciousness of guilt which may be inferred from such circumstance." (Emphasis added)). Moreover, in light of the strong evidence of Petitioner's guilt, including his confession to committing the other crimes (Dkt. 19-3, docket pp. 559-602), and the victims' eyewitness testimony (Dkt. 19-2, docket pp. 586-662; Dkt. 19-3, docket pp. 6-89), there is no reasonable probability that the evidence showing he burned the truck changed the outcome of the trial. Therefore, Petitioner has failed his burden to demonstrate that he was prejudiced by trial counsel's failure to move to dismiss the arson charge before trial. Accordingly, Ground Two warrants no relief.

**Ground Three**

Petitioner alleges that on the first day of trial, the State filed an Amended Information. He contends that defense counsel was ineffective in failing to move for a continuance of the trial to prepare a defense to the Amended Information. He argues that he was prejudiced by counsel's failure to move for a continuance because of "the impact that the Amended Information [had] on the

preparation of the Defendant's defense up to that point," and because there was "the question of whether the amended charges would have made [him] receptive to the plea negotiations. . . ." (Dkt. 1, docket p. 17).

In state court, Petitioner raised this claim in Ground Three of his amended Rule 3.850 motion (Dkt. 19-4, docket pp. 308-09). In denying the claim, the state post-conviction court stated:

> In claim three, Defendant alleges ineffective assistance of counsel due to counsel's failure to request additional time to prepare a defense in response to the amended information. *See* Defendant's Amended Motion for Postconviction Relief and Memorandum of Law in Support of Defendant's Amended Motion for Postconviction Relief, attached. Specifically, Defendant alleges that trial counsel was ineffective for failing to object to the amended information or request a continuance to investigate or prepare a defense to the new charge. *Id.* In addition to the time needed to prepare for the amended information, Defendant alleges that "there was also the question of whether the amended charges would have made the Defendant receptive to the plea negotiations, either on the added charges, or to the disposition of the entire case." *Id.*

> After reviewing the allegations, the court file, and the record, the Court finds claim three to be facially insufficient because Defendant failed to sufficiently allege prejudice - how the outcome of the proceedings would have been different - resulting from counsel's alleged deficiency. Normally, the Court would dismiss claim three without prejudice to allow Defendant to re-file a facially sufficient claim. However, because the Court finds Defendant's allegations in claim three are conclusively refuted by the record, it is not necessary for the Court to dismiss claim three for such a deficiency.

> First, the Court notes that the amended information, which consisted of one new charge [FN1] (arson in the second degree) was provided to defense counsel the week before trial, not the morning of trial as alleged by Defendant. *See* Information, Amended Information, and trial transcript, page 5, attached. However, regardless of when the amended information was received by the defense, Defendant cannot prove that he suffered prejudice when count eleven was ultimately dismissed and thus Defendant was not convicted of arson. *See* judgment and sentence, attached.

> Further, to the extent Defendant alleges that had counsel moved for additional time in order for Defendant to decide if he would be "receptive to plea negotiations, either to the added on charges or to the disposition of the entire case," the record reflects that there was no plea offer available for Defendant. The following conversation took place between the Court, the State, and defense counsel regarding

plea negotiations prior to trial:

THE COURT: Now, one of the other things I most often do during preliminary proceedings is I ask the State and defense if you have completed any negotiations concerning possible resolution of this case. I'll just make that inquiry. Has the State completed any discussions in that regard or do you need additional time?

STATE: No, your honor, the State has completed review of the case.

THE COURT: Okay. And I'll ask defense in the same fashion, have you completed your discussions about possible resolution of the case and do you wish any additional time?

DEFENSE: Judge, the State's not offered my client anything, so -

THE COURT: Okay.

DEFENSE: - we don't have any choice here.

THE COURT: So there's no discussion.

DEFENSE: There's no discussion.

THE COURT: Okay. Is that correct, State?

STATE: That's correct.

THE COURT: And neither side wishes additional time?

STATE: No, your honor.

DEFENSE: No, your honor.

THE COURT: Okay. All right. Then we've addressed that matter and I appreciate that, that is the update on where we stand in that regard.

*See* trial transcript, pages 11-12, attached. Therefore, Defendant is unable to prove that he was prejudiced by counsel's failure to request more time when there was no defense to pursue on the arson count and no plea offer available for him to consider. **Consequently, no relief is warranted on claim three of Defendant's motion.**

[FN1] The Court notes that the amended information also renumbered some of the counts, but the charges remained substantively the same. *See* Information and Amended Information, attached.

(Dkt. 19-4, docket pp. 242-44) (emphasis in original).

This court cannot say that the state court's application of the *Strickland* prejudice standard was objectively unreasonable. To the extent Petitioner asserts that had counsel moved for a continuance he may have been "receptive to plea negotiations," the assertion fails to show prejudice. To demonstrate prejudice in this context, Petitioner must show that "'but for his attorney's errors, he would have accepted the plea offer.'" *Nichols v. McNeil*, 331 F. App'x 705, 707 (11th Cir. 2009) (quoting *Diaz v. United States*, 930 F.2d 832, 835 (11th Cir. 1991)). Petitioner does not allege that he would have accepted a plea offer from the State. Rather, he makes a vague allegation that "[t]here was also the question of whether the amended charges would have made the Defendant receptive to the plea negotiations. . . ." Moreover, he does not show that the State would have offered a plea. As the trial transcript reveals, the State made no plea offer to Petitioner (Dkt. 19-2, docket pp. 211-12). Accordingly, Petitioner cannot show prejudice. *See Jewson v. Crosby*, 2005 WL 1684209, at * 16 (N.D.Fla.2005) (petitioner could not demonstrate prejudice because the state had made no plea offers or exhibited any inclination to plea bargain) (citing *McClenithan v. Dugger*, 767 F.Supp. 257, 258 (M.D.Fla.1991)).

To the extent Petitioner argues that the Amended Information "impact[ed]. . .the preparation of the Defendant's defense up to that point," the argument is wholly vague and conclusory and does not amount to a showing of prejudice because Petitioner fails to explain how the amendment to the Information adversely affected his defense. *See Tejada*, 941 F.2d at 1559 (11th Cir.1991) (Petitioner not entitled to an evidentiary hearing or federal habeas relief on his ineffective assistance of counsel claims where the claims are conclusory); *Strickland*, 466 U.S. at 692 ("[T]hat the errors had some conceivable effect on the outcome of the proceeding" is insufficient to show prejudice.). And

finally, to the extent Petitioner argues that counsel did not have adequate time to prepare a defense to the new count of arson, he cannot show prejudice because the arson charge was dismissed (Dkt. 19-2, docket p. 167).

Petitioner fails to show that the state court's rejection of this ineffective assistance of counsel claim was an unreasonable application of *Strickland*. Accordingly, Ground Three does not warrant federal habeas relief.

**Ground Four**

Petitioner contends that defense counsel was ineffective in failing to object to prosecutorial misconduct. He alleges that although "[t]he prosecutor was told by the judge to stay away from any arguments relating to the Arson charge[,]" she made statements about Petitioner burning the victim's truck during her closing argument. These statements, Petitioner argues, implied that Petitioner burned the truck to hide evidence of other crimes, and influenced the jury to return "a more severe verdict." (*Id.*, docket pp. 20-21).

In state court, Petitioner raised this claim in Ground Four of his amended Rule 3.850 motion (Dkt. 19-4, docket pp. 309-10). In denying the claim, the state post-conviction court stated:

> In claim four, Defendant alleges ineffective assistance of counsel due to counsel's failure to object to prosecutorial misconduct. *See* Defendant's Amended Motion for Postconviction Relief and Memorandum of Law in Support of Defendant's Amended Motion for Postconviction Relief, attached. Specifically, Defendant alleges that "the jury was allowed to hear expert testimony from a fire marshal... however, at no time was the jury told to disregard that testimony given." *Id*. Further, Defendant states that in closing arguments "the prosecutor brings the jury's thoughts of [the] expert testimony back into their minds by claiming that 'it was only after [Defendant]...indicated that he wanted to get rid of the car' that it was determined that the Defendant was the one who burned the car and that is how we know he tried to hide evidence." *Id*. It is Defendant's contention that "had the jury not heard this statement about burning a car to hide evidence...the outcome of the trial would have been different." *Id*. Defendant argues that "in the case at bar, there is no doubt that the prejudicial remarks [regarding the arson charge]...influenced the

jury to reach a more severe verdict by implying that the Defendant was trying to hide evidence from other crimes by burning [the truck]." *Id*.

After reviewing the allegations, the court file, and the record, the Court finds that Defendant cannot establish ineffective assistance of counsel pursuant to *Strickland*. During closing arguments, the State is afforded wide latitude to advance all legitimate arguments based on the evidence. *See Braddy v. State*, 111 So.3d 810, 839 (Fla. 2012). During trial, Defendant's taped confession was admitted into evidence without objection. *See* trial transcript, page 750, attached. In the recording admitted at trial, the following conversation was played for the jury:

> Where did you guys go after that? Uh, we - I don't know, we just run places trying to burn the truck. Where at? Trying to burn the truck? Just hidden places, you know, hiding places so - who drove there? Me, I was driving. I don't know, just finding the places, you know, I just - so you just were driving around looking for a place to burn the truck, that's what you're saying? I used to live down over there. You used to live down there? (inaudible) Ninth Street. Okay. What did - how did you burn the truck? Lighter. Huh? A lighter. Okay. Did you use anything else to burn the truck with? Papers. No just burned it - (inaudible) the seats and then burned it. Burn the seats you said? Yeah (inaudible). So you didn't used anything else to help light it? No. Okay.

*See* trial transcript, page 894 - 895, attached.

In the State's closing argument, there were only two statements made with regard to the alleged arson. First, the State argued, with regard to count fourteen (grand theft of a motor vehicle) as follows:

STATE: And then, of course, you have count 14, which is the final count and that's the taking of Mikelle's truck. And then of course using it for his own personal benefit. And we know that because he drove it and he drive [sic] it into Manatee County. And how do we know that he knew he shouldn't have done that? Well, he destroyed the evidence. He burned the evidence to a crisp and you saw the photographs of that.

*See* trial transcript, page 969, attached. Later, in the State's rebuttal argument, in response to the defense's argument that the State had failed to sufficiently prove that the crimes occurred in Hillsborough County, the State argued as follows:

STATE: And [Defendant] even told you because he said he was driving south towards to the mall, towards Ellenton because he was familiar with Manatee County. He knew he needed to get rid of that car and so they wanted to go into

Manatee County to get rid of that car and that's what they did. And they put that car in a field in Manatee County because that's the area he knew, but he knew that the sexual batteries had happened in Ruskin.

*See* trial transcript, pages 989 - 999, attached.

Neither of the arguments advanced by the State asked for the jury to find Defendant guilty because "Defendant was trying to hide evidence from other crimes by burning [the truck]" as Defendant alleges. *See* trial transcript, pages 951 - 971 and 989 - 1003, attached. Further, both arguments were within the "wide latitude" that is given to the State in performing its closing arguments. The Court also notes that the State never requested for the jury to consider the charge of arson. In fact, the State reminded the jury that "count 11, which was the arson, is not for [their] consideration." *See* trial transcript, page 967, attached. Therefore, the Court finds that there was no legal objection available to the defense because the argument was appropriate and based on properly admitted evidence.

Further, Defendant is unable to allege prejudice with regards to the alleged improper comments due to the fact that Defendant was not convicted of arson. *See* judgment and sentence, attached. **Consequently, no relief is warranted on claim four of Defendant's motion.**

(Dkt. 19-4, docket pp. 244-46) (emphasis in original).

Petitioner has failed to demonstrate deficient performance. Under Florida law, trial counsel is permitted wide latitude in arguing to a jury. *Breedlove v. State*, 413 So. 2d 1 (Fla. 1982). The state post-conviction court determined that "there was no legal objection available to the defense because the argument was appropriate and based on properly admitted evidence." Accordingly, the state post-conviction court has answered the question of what would have happened had defense counsel objected to the prosecutor's statements–the objection would have been overruled. *See e.g.*, *Callahan v. Campbell*, 427 F.3d 897, 932 (11th Cir.2005) (Alabama Court of Criminal Appeals had already answered the question of what would have happened had counsel objected to the introduction of petitioner's statements based on state decisions; the objection would have been overruled; therefore, counsel was not ineffective for failing to make that objection). Because

defense counsel's objection would have been without merit, counsel cannot be deemed ineffective for failing to raise it.

Moreover, the state court's determination that there was no "objection available" was not based on an unreasonable determination of the facts. Petitioner's recorded interview with law enforcement was played for the jury (Dkt. 19-3, docket pp. 438-39). During that interview Petitioner stated, in pertinent part, that he and two others kidnaped two females, put them in one of the victim's truck, and drove away (*Id.*, docket pp. 560-65). After robbing and committing sexual batteries on the victims, and thereafter releasing them (*id.*, docket pp. 571-76), Petitioner and his accomplices burned the victim's truck (*Id.*, docket pp. 585-86).

During her closing argument, the prosecutor stated:

And then, of course, you have Count 14, which is the final count and that's the taking of Mikelle's truck. And then of course using it for his own personal benefit. And we know that because he drove it and he drove it into Manatee County. And how do we know that he knew that he shouldn't have done that? Well, he destroyed the evidence. He burned the evidence to a crisp and you saw the photographs of that.

(Dkt. 19-4, docket p. 56). This statement was permissible because with respect to the grand theft motor vehicle count, the prosecutor was required to prove that Petitioner intended to temporarily or permanently deprive the victim of her truck (*see id.*, docket p. 107). The prosecutor merely argued a conclusion (Petitioner intended to deprive the victim of her truck) that could be drawn from Petitioner's statement that he and his accomplices burned the truck. *See Griffin v. State*, 866 So.2d 1, 16 (Fla.2003) (arguing a conclusion that can be drawn from the evidence is permissible fair comment) (citation omitted).

And during her rebuttal closing argument, the prosecutor stated in pertinent part:

And Rigoberto Martinez even told you because he said he was driving south towards the mall, towards Ellenton because he was familiar with Manatee County. He knew

28

he needed to get rid of that car and so they wanted to go into Manatee County to get rid of that car and that's what they did. And they put that car in a field in Manatee County because that's the area he knew, but he new that the sexual batteries had happened in Ruskin.

(Dkt. 19-4, docket pp. 85-86). This statement was permissible because it was in response to defense counsel's argument that there was no evidence that the three sexual batteries that happened in the truck occurred in Hillsborough County (*Id.*, docket pp. 68-70, 83-86). *See United States v. Young*, 470 U.S. 1, 11-13 (1985) (when prosecutor's comments are an "invited reply" in response to defense counsel's own remarks, and he "[does] no more than respond substantially in order to 'right the scale,' such comments would not warrant reversing a conviction").

Finally, Petitioner has failed to demonstrate that defense counsel committed prejudicial error under *Strickland* for not objecting to the comments. Improper prosecutorial remarks amount to a constitutional violation only if the remarks render the proceedings fundamentally unfair. *Cargill v. Turpin*, 120 F.3d 1366, 1379 (11th Cir. 1997). The relevant inquiry is whether the remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). "[T]he appropriate standard of review for such a claim on writ of habeas corpus is 'the narrow one of due process, and not the broad exercise of supervisory power.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. at 642). In making this assessment, a reviewing court must evaluate the allegedly improper comments in the context of both the prosecutor's entire closing argument and the trial as a whole. *Branch v. Estelle*, 631 F.2d 1229, 1233 (5th Cir. 1980).

Taken in the context of the entire trial, the prosecutor's comments, even if improper, were not so egregious as to render the trial fundamentally unfair. Nor did they infect the trial with such unfairness that the resulting conviction amounts to a denial of due process. *See Tucker v. Kemp*, 802

F.2d 1293, 1296 (11th Cir. 1986), *cert. denied*, 480 U.S. 911 (1987) ("If a reviewing court is confident that, absent the improper remarks, the jury's decision would have been no different, the proceeding cannot be said to have been fundamentally unfair.").  The prosecutor's comments are not of such magnitude as to invalidate the entire trial.

In sum, counsel was not ineffective in failing to object to the prosecutor's arguments.  Even if he had objected, the objection would have been overruled. And Petitioner demonstrates no prejudice from any claimed deficient performance. Petitioner's claim of ineffective assistance of counsel therefore fails both prongs of the *Strickland* test.

Petitioner has not met his burden of proving that the state courts' resolution of this claim was an unreasonable application of *Strickland*.  Accordingly, Ground Four does not warrant federal habeas relief.


**Ground Five**

Petitioner contends that defense counsel was ineffective in failing to move for a competency hearing.  He alleges that defense counsel hired a psychiatrist who determined that Petitioner was incompetent to proceed to trial, and the State's psychiatrist concluded that Petitioner was competent. He argues that had counsel moved for a competency hearing, the "Judge may have ruled that [he was] in fact incompetent. . . ."  (Dkt. 1, docket p. 23).

In state court, Petitioner raised this claim in Ground Five of his amended Rule 3.850 motion (Dkt. 19-4, docket p. 310).  In denying the clam, the state post-conviction court stated:

> In claim five, Defendant alleges ineffective assistance of counsel due to counsel's failure to file a motion requesting a competency evaluation. *See* Defendant's Amended Motion for Postconviction Relief and Memorandum of Law in Support of Defendant's Amended Motion for Postconviction Relief, attached.

Specifically, Defendant alleges that his counsel should have filed a motion requesting a competency hearing to determine whether Defendant was able to stand trial. *Id*. It is Defendant's contention that "had a hearing been conducted [the] judge may have ruled that the Defendant...is in fact incompetent, which would have changed the outcome of the proceeding." *Id*.

After reviewing the allegations, the court file, and the record, the Court finds claim five to be facially insufficient because Defendant failed to sufficiently allege prejudice - how the outcome of the proceedings would have been different - resulting from counsel's alleged deficiency. Normally, the Court would dismiss claim five without prejudice to allow Defendant to re-file a facially sufficient claim. However, because the Court finds Defendant's allegations in claim five are conclusively refuted by the record, it is not necessary for the Court to dismiss claim five for such a deficiency.

Defendant's allegations are refuted by the record. The record reflects that Defendant's counsel did in fact file a motion requesting for Defendant's competency to be evaluated. *See* Motion for Examination of Defendant's Competence to Proceed, attached. The Court granted counsel's motion on June 2, 2009. *See* Order for Competency and Sanity Evaluation and Psychiatric Evaluation Return, attached. Therefore, Defendant cannot prove counsel was ineffective because counsel filed a motion to evaluate Defendant's competency and it was subsequently granted by the Court. Further, a review of the competency evaluation reflects that Defendant was deemed competent to stand trial [FN2]. **Consequently, no relief is warranted on claim five of Defendant's motion**.

[FN2] In the interest of Defendant's privacy, the Court is not attaching the competency evaluation to this order.

(Dkt. 19-4, docket pp. 247-48) (emphasis in original).

Initially, Petitioner failed to exhaust his state court remedies with respect to this claim because he failed to raise this claim on appeal from the denial of his amended Rule 3.850 motion. In his Initial Brief on appeal, Petitioner raised a claim that is different from the claim he now raises in his federal habeas petition, and raised in his amended Rule 3.850 motion. On appeal he did not argue that counsel was ineffective in failing to request a competency *hearing* (Dkt. 19-5, docket pp. 16-17). Rather, he argued that counsel was ineffective in failing to request another competency *evaluation* after the State's expert determined that he was competent to proceed to trial (*Id*.).

This claim is therefore procedurally defaulted because the Florida appellate court would now refuse to hear the claim Petitioner raises in Ground Five of his petition. And since Petitioner shows neither cause and prejudice nor a manifest injustice to overcome the procedural default, Ground Five is procedurally barred from review.

Even if the claim was not procedurally barred, it would fail on the merits. "[T]he conviction of an accused person while he is legally incompetent violates due process[,]" *Pate v. Robinson*, 383 U.S. 375, 378 (1966). The test for determining a defendant's competency to stand trial or enter a plea is "whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding--and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402 (1960).

Petitioner has presented no evidence that he was legally incompetent at the time of his trial. He presents no evidence (affidavits, testimony, medical records, etc.) in support of his conclusory assertion that a psychiatrist found him incompetent. The only competency report in the record indicates that Petitioner was competent to proceed to trial (Dkt. 19-2, docket p. 78).[1] Because there is no evidence that Petitioner was incompetent, counsel was not ineffective in failing to move for a competency hearing. Accordingly, Ground Five does not warrant relief.

**Ground Six**

Petitioner argues that the cumulative effect of counsel's various alleged errors warrants relief. The state post-conviction court rejected the claim of cumulative error presented in Petitioner's amended Rule 3.850 motion:

---

[1]The report also indicated, in pertinent part, that another doctor previously determined that Petitioner "could possibly be incompetent to proceed to trial or could be malingering his psychiatric symptomatology." (Dkt. 19-2, docket p. 76).

In claim six, Defendant alleges ineffective assistance of counsel due to the cumulative effect of the errors committed by counsel and alleged in claims one through five. *See* Defendant's Amended Motion for Postconviction Relief and Memorandum of Law in Support of Defendant's Amended Motion for Postconviction Relief, attached.

After reviewing the allegations, the court file, and the record, the Court finds that, given its findings with respect to claims one, two, three, four, and five, Defendant has failed to establish entitlement to relief. Because Defendant's claims of ineffective assistance of counsel lack merit, Defendant's cumulative error claim also fails. *See Griffin v. State*, 866 So.2d 1, 22 (Fla. 2003) ("Because the alleged individual error claims are without merit, the contention of cumulative error is similarly without merit, and [the defendant] is not entitled to relief on this claim"). **Consequently, no relief is warranted on claim six of Defendant's motion.**

(Dkt. 19-4, docket p. 248) (emphasis in original).

"The Supreme Court has not directly addressed the applicability of the cumulative error doctrine in the context of an ineffective assistance of counsel claim." *Forrest v. Fla. Dep't of Corr.*, 342 Fed.Appx. 560, 564 (11th Cir.2009). The Supreme Court has held, however, in relation to an ineffective assistance of counsel claim, that "there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt." *Id*. at 564–65 (quoting *United States v. Cronic*, 466 U.S. 648, 659 n. 26 (1984)). Petitioner has not established entitlement to relief on any of his claims of ineffective assistance of trial counsel. Thus, he fails to show that the state court's rejection of his cumulative error claim was contrary to or an unreasonable application of clearly established federal law. Ground Six therefore provides no relief.

Any of Petitioner's allegations not specifically addressed herein have been determined to be without merit.

It is therefore **ORDERED AND ADJUDGED** that:

1. The Petition for Writ of Habeas Corpus (Dkt. 1) is **DENIED**. The **Clerk** is directed to

33

enter judgment accordingly and close this case.

2. A Certificate of Appealability (COA) is **DENIED** in this case, since Petitioner cannot make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). And because Petitioner is not entitled to a COA, he is not entitled to proceed on appeal *in forma pauperis*.

**DONE AND ORDERED** in Tampa, Florida on March 27, 2019.

Charlene Edwards Honeywell
United States District Judge

Copies to: Petitioner *pro se*; Counsel of Record